UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA M.,

                              Plaintiff,

v.                                                          1:24-cv-00571
                                                                   (DNH/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

HILLER COMERFORD INJURY               ELIZABETH HAUNGS, ESQ.
& DISABILITY LAW
6000 North Bailey Avenue - Suite 1a
Amherst, NY 14226
*Counsel for Plaintiff*

SOCIAL SECURITY ADMINISTRATION       JASON P. PECK, ESQ.
Office of Program Litigation, Office 2
6401 Security Boulevard
Baltimore, MD 21235
*Counsel for Defendant*

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

**I.    INTRODUCTION**

      Plaintiff Tina M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for benefits. Dkt. No. 1. Plaintiff did not consent to the jurisdiction of a Magistrate Judge. Dkt. No. 4. The matter was referred to the undersigned

for a Report and Recommendation by the Hon. David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c). Dkt. Nos. 11, 17. Plaintiff also filed a reply brief. Dkt. No. 18. Oral argument was not heard. For the following reasons, the Court recommends Plaintiff's motion be granted, Defendant's motion be denied, and the Commissioner's determination be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## II.   BACKGROUND [1]

Plaintiff was born in 1970. T. 33. She completed ninth grade, but left school in the tenth grade and never obtained her GED. *Id.* at 41-42. She had a learning disability in reading and was placed in special education classes which were smaller in size than regular classes. *Id.* at 42-43. On April 18, 2022, Plaintiff filed an application for Supplemental Security Income ("SSI") alleging disability beginning August 13, 2021, which was later amended to April 18, 2022. *Id.* at 11, 37. She alleged disability due to sciatic nerve disorder left side and leg, chronic obstructive pulmonary disease ("COPD"), neck, back, "hand/wrist/arm" problems, depression, insomnia, migraines, and acid reflux. *Id*. at 229. The application was denied on October 24, 2022, and on reconsideration on January 13, 2023. *Id*. at 64-83, 85-93. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 143. On June 8, 2023, she appeared

---

[1] The Administrative Record/Transcript is found at Dkt. No. 8. Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. The Court's citations to the parties' briefs, however, will refer to the pagination generated by CM/ECF at the header of each page, not to the pagination of the individual documents.

by telephone before ALJ Asad Ba-Yunus. *Id*. at 31-62. On July 6, 2023, the ALJ issued an unfavorable decision. *Id*. at 11-22. On March 1, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final determination of the Commissioner. *Id*. at 1-7. Plaintiff commenced this action on April 26, 2024. Dkt. No. 1.

### III. LEGAL STANDARDS

#### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).[2] Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration ("SSA") regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 182c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

3

> Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). The claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

## B. Standard of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is

supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996). Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his reasonings. *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess*, 537 F.3d at 130; *Pratts*, 94 F.3d at 39.

## IV. THE ALJ'S DECISION

The ALJ issued his decision on July 6, 2023. T. 11-22. Applying the five-step disability sequential evaluation, the ALJ first determined Plaintiff had not engaged in substantial gainful activity since her application for benefits. T. 13. At step two, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disc disease, depression disorder, and asthma/COPD. *Id*. Proceeding to step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing" or "Listings"). T. 14. In this regard, the ALJ considered Listings 1.16, 1.18, 3.03, and 12.04. *Id*.

The ALJ next concluded Plaintiff has the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes or scaffolds, must avoid concentrated exposure to pulmonary irritants such as strong fumes, odors, dust and gases, as well as wetness/humidity, and extremes of heat/cold; she may only perform unskilled, simple, routine tasks, may have up to frequent exposure to the general public, and can tolerate occasional changes to a routine work setting.

T. 16. At step four, the ALJ found Plaintiff cannot perform any past relevant work. T. 20. At step five, the ALJ determined, based on her age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy Plaintiff could perform. T. 21. Accordingly, the ALJ concluded Plaintiff was not disabled. T. 21-22.

## V. THE PARTIES' CONTENTIONS

Plaintiff argues the ALJ failed to properly develop the record concerning Plaintiff's intellectual disability and learning disorder. Dkt. No. 11 at 7-10. Specifically, Plaintiff asserts the ALJ erred in failing to obtain intellectual testing recommended by consultative examiner

6

Brett Hartman, Psy.D. *Id.* at 8; *see also* T. 471. Plaintiff further contends the ALJ improperly evaluated the medical opinion of consultative examiner Shankar Ganti, M.D. Dkt. No. 11 at 10-14. Lastly, Plaintiff argues the ALJ used improper factors when evaluating Plaintiff's subjective complaints. *Id.* at 14-17. According to Plaintiff, these errors require remand. *See generally id.*; *see also* Dkt. No. 18.

The Commissioner responds contending the ALJ adequately developed the record and the ALJ was not required to obtain the intellectual testing recommended by Dr. Hartman. Dkt. No. 17 at 5-10. Defendant also argues the ALJ reasonably found Dr. Ganti's medical opinion only partially persuasive. *Id.* at 10-15. Finally, the Commissioner asserts the ALJ properly evaluated Plaintiff's subjective complaints when finding them inconsistent with the record. *Id.* at 16-17. Thus, Defendant concludes remand is not required and the ALJ's decision should be affirmed. *Id.* at 17.

## VI.   DISCUSSION

### A.   Plaintiff's Intellectual Functioning

#### 1.   Duty to Develop the Record

Plaintiff challenges the ALJ's failure to obtain an assessment of her intellectual functioning where intellectual testing was recommended by consultative examiner, Brett T. Hartman, Psy.D., and the evidence in the record was insufficient regarding her intellectual abilities. Dkt. No. 11 at 9; *see also* T. 471. As noted above, after finding Plaintiff's depression disorder, among other impairments, to be a severe impairment at step two, the ALJ limited Plaintiff to "unskilled, simple, routine tasks, [she] may have frequent exposure to the general public, and [she] can tolerate occasional changes to a routine work setting." T. 16.

Whether the ALJ has satisfied his duty to develop the record is a threshold question. *Matthew D. v. Comm'r of Soc. Sec.*, No. 5:20-CV-793 (TJM), 2021 WL 1439669, at *6 (N.D.N.Y. Apr. 16, 2021). Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Melanie L. v. Comm'r of Soc. Sec.*, No. 5:22-CV-87 (ATB), 2022 WL 17992220, at *6 (N.D.N.Y. Dec. 29, 2022) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (other citation omitted)). Remand is appropriate where this duty is not discharged. *Matthew D.*, 2021 WL 1439669, at *6; *Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria*, 685 F.2d at 755). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa*, 168 F.3d at 7 n.5 (internal quotation marks and citation omitted); *Camellia O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1153 (DJS), 2021 WL 354099, at *5 (N.D.N.Y. Feb. 2, 2021) ("[T]he ALJ's duty to develop the

record is not unlimited and is discharged when the ALJ 'possesses [the claimant's] complete medical history' and there are no 'obvious gaps or inconsistencies' in the record.").

However, failure to develop the record may be grounds for remand. *Rosa*, 168 F.3d at 82-83. "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *Id.* at 79 (quoting *Perez*, 77 F.3d at 47). The Social Security Administration regulations explain this duty to claimants this way:

> Before we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources and entities . . . when you give us permission to request the reports. Every reasonable effort means that we will make an initial request for evidence from your medical source or entity . . . and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination.

20 C.F.R. §§ 416.912(b)(1), (b)(1)(i). The regulations further explain that a claimant's "complete medical history" means the records of his or her "medical source(s)." *Id.* § 416.912(b)(1)(ii). If the information obtained from medical sources is insufficient to make a disability determination, or if the ALJ is unable to seek clarification from treating sources, the regulations also provide that the ALJ should ask the claimant to attend one or more consultative evaluations. *Id.* §§ 416.912(b)(2), 416.917.

In general, a consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (citing 20 C.F.R. § 416.919a(b)) (Summary Order); *see Martinez v. Colvin*, 286 F. Supp. 3d 539, 543 (W.D.N.Y. 2017) (citing 20 C.F.R. § 404.1519a(b)(1)) ("An ALJ may order a

9

consultative examination when '[t]he additional evidence needed is not contained in the records of medical sources.'"). The ALJ has discretion to order a consultative examination to further develop the evidentiary record. *See Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) ("The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record."); *see also Serianni v. Astrue*, No. 6:07-CV-250, 2010 WL 786305, at *5 (N.D.N.Y. Mar. 1, 2010) (citing *Hughes v. Apfel*, 992 F. Supp. 243, 248 (W.D.N.Y. 1997)); *see* 20 C.F.R. § 416.917.

Failure to obtain a consultative examination where necessary for the ALJ to make an informed decision is reversible error. *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000). However, the ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it. *Tankisi*, 521 F. App'x at 32; *see also Lefever v. Astrue*, 5:07-CV-622, 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd*, 443 F. App'x 608 (2d Cir. 2011).

    2.    Analysis

The SSA regulations give the ALJ discretion to order a consultative intelligence evaluation to develop the record, if the ALJ finds the medical sources in the record do not supply the information needed to form a conclusion about a claimant's intellectual functioning. 20 C.F.R. §§ 404.1519a(a) and 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317 (MAT), 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

Plaintiff argues the ALJ failed to properly evaluate and develop the record with regard to Plaintiff's intellectual disability and learning disorder such that remand is warranted. Dkt. No. 11 at 7-10. The Court agrees because the record contains conflicting or, at the very least, ambiguous evidence as to Plaintiff's intellectual functioning that warrants further development of the record.

### i.   Opinion of Brett Hartman, Psy.D.

Dr. Hartman conducted a consultative psychiatric evaluation of Plaintiff on August 31, 2022. T. 468-71. He noted Plaintiff completed the tenth grade in special education, but she did not receive a GED. T. 468. In addition to reporting sleeplessness and depressive symptoms "including sadness, low energy, crying spells, social isolation, feeling overwhelmed, irritability, and loss of interest," she also acknowledged "that she had difficulty academically in all areas especially math and spelling." T. 469. Her employment history involved working as a prep cook and dishwasher, a job she held "for nine years before the place closed." *Id.* Plaintiff acknowledged being able to dress, bathe, and groom herself; she could do her own cooking, cleaning, and laundry, "but she takes things very slowly and takes frequent breaks." T. 470. She shopped with assistance, and could manage her own money, but she did not drive. *Id.* She reported having two close friends and she got along with her three sons. *Id.*

Dr. Hartman diagnosed Plaintiff with an "[i]ntellectual disability – provisional"[3] and further noted she had a learning disorder by history, and unspecified depressive and anxiety disorders. T. 471. His mental status examination revealed she appeared well groomed with restless motor behavior and fair eye contact. T. 469. He found her thought processes were

---

[3] A "'provisional diagnosis' connotes a *strong presumption* that full criteria for a definitive diagnosis ultimately will be met." *Trimm v. Colvin*, No. 7:13-cv-138 (GLS/ESH), 2014 WL 2501600, at *5 (N.D.N.Y. June 4, 2014) (emphasis in original).

11

coherent and goal directed, her affect was anxious, and her speech was "[f]luent with a pressured quality of voice." *Id.* Her mood was stated to be nervous, but her sensorium was clear, and she was oriented in all spheres. T. 470. Dr. Hartman found Plaintiff's attention and concentration "mildly impaired" because she counted without difficulty, "but made errors on calculation and serial 7s." *Id.* Her intellectual functioning was "in the deficient range with a deficient general fund of information." *Id.* Her judgment was fair, her insight was fair to poor, and her recent and remote memory skills were "generally intact." *Id.*

Dr. Hartman concluded Plaintiff could understand, remember, and apply simple directions, and she had mild difficulty using reason and judgment. T. 470-71. She had mild difficulty interacting adequately with others and in sustaining an ordinary routine. T. 471. She had moderate difficulty regulating her emotions, and marked difficulty in understanding, remembering, and applying complex directions. *Id*. He concluded that the "[r]esults appear consistent with intellectual deficits and psychiatric problems, that would interfere with functioning." *Id*. In addition to the provisional diagnosis of intellectual disability and the diagnosis of a learning disorder by history, Dr. Hartman recommended she "undergo intellectual testing to determine the extent of intellectual impairment . . . and continue with current mental health treatment." *Id*. Her prognosis was "fair to guarded given [the] multiple nature of symptoms." *Id*. He found she could "manage her funds with periodic outside assistance." *Id*.

### ii.    Opinions of State Agency Reviewers

State agency record reviewer K. Lieber-Diaz, Psy.D., reviewed the record evidence and concluded Plaintiff retained functional capacity as follows: (1) for understanding and memory, she "is able to understand and remember simple instructions and work procedures"; (2) for sustained concentration and persistence, she "can maintain adequate attention and concentration

12

to complete work like procedures and can sustain a routine"; (3) for social interaction, she "is able to relate and respond in an appropriate manner"; and (4) for adaptation, she "is able to adapt to customary changes and make work like decisions." T. 80. Dr. Lieber-Diaz opined that the diagnosis made by Dr. Hartman of an intellectual disability was "not supported by available [medical evidence of record] nor [claimant's] reports of adaptive functioning." *Id.* While Dr. Lieber-Diaz agreed Plaintiff had a "severe psychiatric impairment that results in significant functional limitations," she retained the functional capacity described above. *Id.* Upon reconsideration, state agency record reviewer T. Linden, Ph.D., indicated "[a]ll psychiatric evidence in file has been reviewed, and the prior assessment of [Dr. Lieber-Diaz] is affirmed." T. 92.

### iii. Plaintiff's Hearing Testimony and Function Report

At her hearing before the ALJ, Plaintiff initially testified she completed the tenth grade, T. 41, but the ALJ further clarified, and Plaintiff acknowledged, that she left school during the tenth grade so the highest grade she completed was ninth grade. T. 42. She was learning disabled and in special education. *Id.* She did not obtain her GED. T. 41. She did not have any other type of training, or vocational or certificate programs. T. 42. In her function report on the questions asking how well she could follow written and spoken instructions, she responded "not good." T. 249. Plaintiff endorsed she could handle money. T. 247. However, she acknowledged confusion during panic attacks. T. 260. Nevertheless, Plaintiff was able to testify coherently at her hearing, T. 33-57, and she completed a function report and a pain questionnaire in her own handwriting. T. 244-52, 256-61. Additionally, in a Disability Report on Form SSA-3368, dated May 16, 2022, the interviewer noted the highest level of school completed by Plaintiff at BOCES Washington Saratoga was tenth grade, and she could read and write a simple

message such as a shopping list or short and simple notes. T. 230. However, the record contains no indication of Plaintiff's intelligence quotient, and there are no school records or another intelligence assessment beyond Dr. Hartman's provisional diagnosis of an intellectual disability and his recommendation that she "undergo intellectual testing to determine the extent of intellectual impairment." T. 471.

### iv.    The ALJ's Decision

In his decision, the ALJ found at step three that Plaintiff had moderate limitations in understanding, remembering, and applying information, and acknowledged Plaintiff "endorsed difficulties following written and spoken instructions." T. 14-15 (citing T. 249). The ALJ further noted this was consistent with Dr. Hartman's opinion that her "cognitive functioning was within a deficient range with a deficient general fund of information." T. 15 (citing T. 470). The ALJ also determined Plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace and acknowledged Plaintiff "endorsed difficulties completing tasks and paying attention for more than one hour" which was consistent with the impaired attention and concentration found by Dr. Hartman "such that she made errors on calculations and serial sevens." *Id.* (citing T. 470).

However, further in the sequential analysis when explaining the persuasiveness of various opinions in the record, the ALJ found Dr. Hartman's opinion only "partially persuasive" because the ALJ was "not persuaded that the claimant has marked difficulties in the area of understanding and remembering when considering" Dr. Hartman's finding that Plaintiff "had generally intact recent and remote memory skills." T. 19 (citing T. 470). The ALJ made absolutely no reference to Dr. Hartman's recommendation for an intelligence examination. *Id.* Likewise, in considering the opinions of state agency reviewers, Dr. Lieber-Diaz and Dr. Linden

and finding them "fairly persuasive," the ALJ again did not mention Dr. Hartman's recommendation to obtain an intelligence evaluation, despite indicating that these opinions of the state agency reviewers were "consistent with the results of Dr. Hartman's mental status examination that revealed impaired attention and concentration and limited cognitive functioning." *Id.* (citing T. 468-71).  Notably, Dr. Leiber-Diaz opined that Dr. Hartman's diagnosis that Plaintiff had an intellectual disability was "not supported" by the medical records or Plaintiff's reports of adaptive functioning.  T. 80.  Thus, the Court agrees with Plaintiff that the ALJ should have further developed the record by obtaining an intelligence evaluation, particularly in view of Dr. Hartman's estimation that Plaintiff's intellectual functioning fell "in the deficient range with a deficient general fund of information." T. 470.  As noted, other evidence in the record is, at a minimum, ambiguous as to Plaintiff's reading, writing, and calculation abilities.

Given the evidence of "cognitive impairment, with conflicting evidence as to [Plaintiff's] abilities, the ALJ should have ordered a consultative intelligence evaluation to clarify [her] intelligence level and properly render a decision on whether [her] mental impairment is severe." *Dufresne v. Astrue*, No. 5:12-CV-00049 (MAD/TWD), 2013 WL 1296376, at *8 (N.D.N.Y. Mar. 8, 2013) (remanding for intelligence evaluation of claimant where record contained evidence of claimant's limited intellectual functioning, including plaintiff's failure to graduate from high school or obtain GED, and opinion of consultative examiner that claimant suffered from cognitive delays, inability to do simple math calculations, and estimating his intelligence to be in the deficient range), *report and recommendation adopted*, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013); *see also Faison v. Berryhill*, No. 16 Civ. 6055 (MAT), 2017 WL 3381055, at *5 (W.D.N.Y. Aug. 5, 2017) (remanding with instructions to perform a consultative and/or

intelligence testing in light of consultative examiner's diagnosis of probable borderline intellectual functioning); *Laveck v. Astrue*, No. 10 Civ. 1355 (RFT), 2012 WL 4491110, at *6 (N.D.N.Y. Sept. 28, 2012) (ALJ failed to develop the record by not ordering an intelligence exam where ALJ failed to discuss plaintiff's learning disability, plaintiff testified she had poor school performance, and consultative psychiatric exam suggested low average cognitive functioning; court remanded with instructions to develop the record regarding plaintiff's learning disorder). Accordingly, remand to permit further development of the record, including an intelligence evaluation, is necessary for a proper evaluation of Plaintiff's mental limitations on her ability to work, if any.

**B.     On Remand, the ALJ Should Consider Listing 12.05**

In his decision, the ALJ considered whether Plaintiff's mental impairments satisfied Listing 12.04, T. 14-16, but did not consider Listing 12.05 which describes the standard for intellectual disorders. *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.05. A claimant can satisfy Listing 12.05 by meeting criteria in either paragraph A or paragraph B. *Id.* The third benchmark of both paragraphs requires a claimant to show evidence supporting the conclusion that the intellectual disorder began before the claimant reached 22 years of age. *Id.* Subject to the results of the intelligence evaluation for which the Court is remanding this matter, the current record contains some evidence for the potential applicability of Listing 12.05. Courts have noted that attendance in "special education classes or poor reading abilities have been recognized as possible examples of deficits in adaptive functioning." *Wilson v. Comm'r of Soc. Sec.*, No. 17-CV-6695-JWF, 2019 WL 1230015, at *4 (W.D.N.Y. Mar. 15, 2019) (citations omitted); *see Black v. Berryhill*, No. 17 Civ. 557 (FFG), 2018 WL 4501063, at *5-6 (W.D.N.Y. Sept. 20, 2018) (remanding for reconsideration of claimant's adaptive functioning where ALJ failed to

consider that claimant attended special education classes, dropped out of school before tenth grade, had difficulty with reading, writing, and simple math, and never held an unskilled job for longer than a few months). Also, because Plaintiff did not receive any formal education beyond tenth grade, she would thus appear to satisfy the third requirement of both paragraphs A and B. Accordingly, on remand, following receipt of the intelligence evaluation, the ALJ should consider, in addition to Listing 12.04, whether the Plaintiff's mental impairments satisfy the requirements of Listing 12.05. *See Wilson*, 2019 WL 1230015, at *3 (collecting cases finding that claimants who "attended special education classes; dropped out of school before graduation; or had difficulties in reading, writing, or math" presented circumstantial evidence of deficits in adaptive functioning before age 22).

### C. Plaintiff's Remaining Arguments

Because remand is recommended for further development of the record as set forth above, the Court declines to reach Plaintiff's additional arguments regarding the ALJ's evaluation of the opinion of consultative examiner Shankar Ganti, M.D., and in the evaluation of Plaintiff's symptoms.

### VII. CONCLUSION

Given the gap in the record and resulting error in the application of the five-step evaluation identified above, the Court cannot conclude that substantial evidence supports the ALJ's decision and therefore remand is appropriate for further development of the record. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**, Defendant's motion for judgment on the pleadings (Dkt. No. 17) be **DENIED**,

and the Commissioner's determination be **REVERSED** and **REMANDED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 2, 2025
Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge